IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. KRISPIN,

               Plaintiff,                      OPINION AND ORDER

      v.                                     09-cv-129-bbc

MIKE THURMER, THERESA MURPHY,
MICHAEL MEISNER, AMY SMITH,
RICK RAEMISCH and TOM GOZINSKE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This civil rights case brought under 42 U.S.C. § 1983 involves two important interests: a parent's interest in having a relationship with his children and the government's interest in protecting those children from harm. Plaintiff is a prisoner in Wisconsin. Since 2001, prison officials have prohibited him from seeing his two sons on the ground that they would be at risk for "victimization." Plaintiff is challenging that restriction on the ground that it violates his constitutional right of familial association.

      Both sides have filed motions summary judgment, which are ripe for review. Dkt. ## 16 and 20. Because the parties have not provided enough admissible evidence to allow the court to make an informed decision, I am staying a ruling on the motions to allow the parties

1

to supplement the record.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

UNDISPUTED FACTS

Plaintiff James Krispin has two sons, one born in November 1998 and the other born in July 2000.  In October 2000, plaintiff was convicted of one count of disorderly conduct and three counts of bail jumping as a habitual offender.  The "comments" section next to plaintiff's disorderly conduct conviction states:

> No contact with victims Angela Barker or her parents Leslie and Aaron Hoffman or Norman and Lisa Barker, Norman Benson. AODA Assessment. Sex offender treatment.  No contact with anyone under 18.  May have contact with his own children while in confinement (writing, phone or visits while under control of DOC or law enforcement).

The trial court sentenced plaintiff to 10 years' imprisonment for the first count of bail jumping and 27 months each for disorderly conduct and the two remaining bail jumping counts.  The sentences were to run concurrently.

Plaintiff was housed at the Waupun Correctional Institution in Waupun, Wisconsin, where he remains today.  When he was first incarcerated, he was allowed visits with his sons. However, on April 3, 2001, Gary McCaughtry (the prison warden) and Cathy Jess (the deputy warden) removed plaintiff's sons from his visitor list.  On April 20, 2001, plaintiff

2

filed a grievance regarding that decision.  The complaint examiner recommended dismissal of the complaint, citing Wis. Admin. Code § DOC 309.08(4)(f) and (g).  These provisions permit the warden to remove a person from a prisoner's visitor list if "[t]he warden has reasonable grounds to believe that the inmate's offense history indicates there may be a problem with the proposed visitation" or if "[t]he warden has reasonable grounds to believe that the proposed visitor may be subjected to victimization."  The examiner added:

> WCI has a responsibility to provide secure and orderly operation of the Institution, public safety and the protection of visitors, staff and inmates. Given this inmate's history of sexual assault, it is appropriate to restrict him from visiting with minors in order to meet the institution's responsibility.

The warden, the corrections complaint examiner and the office of the Secretary affirmed the decision.  In a letter to Heidi Krispin (plaintiff's wife and mother of his children), McCaughtry stated that the decision "was based on [plaintiff's] offense history as being a problem with the proposed visitation and the proposed visitor may be subject to victimization."

In August 2007, plaintiff asked defendant Michael Thurmer (the current warden of the Waupun prison), to place his children back on his visitor list.  In a response dated August 22, 2007, Thurmer declined plaintiff's request, stating: "Your extensive history of victimizing vulnerable minors and your history of not taking responsibility for your acts indicate you continue to be a threat to vulnerable persons and the public."  In addition to

3

these factors, Thurmer relied on "the recommendation of [plaintiff's] Probation and Parole Agent that all minors be removed from his visiting list."

In September 2007, plaintiff filed another grievance regarding the decision to deny visitation with his sons. Defendant Theresa Murphy, a complaint examiner, recommended dismissal of the grievance, concluding that the "decision of the Warden not to approve the minor children is discretionary" and the decision was "authorized by administrative rules." Defendants Michael Meisner (the deputy warden), Tom Gozinske (a corrections complaint examiner) and Amy Smith (Deputy Secretary of the Department of Corrections) affirmed the decision.

Plaintiff is permitted to write letters and make telephone calls to his children.

Defendant Richard Raemisch is Secretary of the Wisconsin Department of Corrections.

OPINION

The relationship a parent has with his children is often the most important part of the parent's life, a fact reflected in the teachings of history, science and law. E.g., Moore v. City of East Cleveland, Ohio, 431 U.S. 494, 503-04 (1977) ("[T]he Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition."); Wisconsin v. Yoder, 406 U.S. 205, 232 (1972) ("The

4

history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children."); Prince v. Massachusetts, 321 U.S. 158, 166 (1944) ("It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder."); Richard Dawkins, Selfish Gene 88-108 (Oxford University Press 1989) (1976) (discussing biological basis for parental bond). For some, there is no greater anguish than the loss of a child. Because of the importance of the parental bond and its intensely personal nature, the government is reluctant to interfere with family life, even if doing so might be in the child's best interest. E.g., Quilloin v. Walcott, 434 U.S. 246, 255 (1978) ("[T]he Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.").

This reluctance is even stronger in the context of visitation. Only when there is a strong showing of abuse or neglect will the government prohibit a parent from seeing his own child. E.g., Uniform Marriage and Divorce Act § 407(a) ("A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health."). Even when there is evidence of abuse, courts may still decline to prohibit contact

5

if there is reason to question the allegations. E.g., Morgan v. Foretich, 546 A.2d 407, 410 (D.C. 1988) (upholding decision to allow father two-week, unsupervised visitation with daughter despite mother's allegations of repeated sexual abuse because evidence was "in equipoise"); In re Iris M., 703 A.2d 1279 (Md. Ct. App. 1998) (concluding that daughter's allegations of sexual abuse and father's no contest plead was insufficient evidence to justify denying father visitation rights).

The calculus changes significantly when the parent is incarcerated. Although prisoners retain a right of familial association, the strength of that right is necessarily diminished by the fact of incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.") (citations omitted). Beyond the inherent limitations imposed by prison walls, prison administrators are less reluctant to restrict a prisoner's family relationships and courts are more deferential to the administrators' judgments about the propriety of those restrictions. In particular, the Supreme Court has applied the test first enunciated in Turner v. Safley, 482 U.S. 78 (1987), which is whether the restriction is reasonably related to a legitimate penological interest. Overton, 539 U.S. at 132. Four factors are relevant to that determination: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether the prisoner retains alternatives for exercising the right; the impact that

6

accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. Id.

Defendants have the initial burden to show a logical connection between the restriction and a legitimate penological interest. Beard v. Banks, 548 U.S. 521, 535 (2006) ("Turner *requires prison authorities to show* more than a formalistic logical connection between a regulation and a penological objective.") (emphasis added); King v. Federal Bureau of Prisons, 415 F.3d 634, 639 (7th Cir. 2005) ("the government must present some evidence to show that the restriction is justified"); see also Singer v. Raemisch, No. 07-3400, slip op. at 13 (7th Cir. Jan. 25, 2009) ("[T]he burden shift[s]" to the prisoner "[o]nce the prison officials provid[e] the court with a plausible explanation."); Conyers v. Abitz, 416 F.3d 580, 585 (7th Cir. 2005) (imposing burden on prison officials under Turner to show that interest was implicated in particular case). This "first Turner 'factor' is more properly labeled an 'element' because it is not simply a consideration to be weighed but rather an essential requirement." Salahuddin v. Goord, 467 F.3d 263, 274 (2d Cir. 2006) see also Singer, slip. op. at 8 ("[T]he first [Turner factor] can act as a threshold factor.").

Unlike prison officials in other cases involving restrictions on visitation in prison, defendants do not argue that visitation with plaintiff's children would be harmful to his rehabilitation. Compare Wirsching v. Colorado, 360 F.3d 1191, 1199-01 (10th Cir. 2004); Phillips v. Thurmer, No. 08-cv-286-bbc, 2009 WL 1252002, *3 (W.D. Wis. Apr. 30,

7

2009). In fact, they seem to disclaim any reliance on this interest in their responses to plaintiff's interrogatories. E.g., Dfts.' Resp. to Plt.'s Third Set of Interr., dkt. #19-6, at 2 (defendants are "unaware of any claim that [allowing plaintiff visitation with his children] would be a problem with the plaintiff's reintegration into the community or rehabilitation"). Instead, defendants say that "[a]pproving minors to visit with untreated sex offenders raises concerns that [plaintiff] may victimize the minor visitors," id.

Of course, protecting children from harm is a legitimate interest. Overton, 539 U.S. at 133. The question is whether prohibiting plaintiff from seeing his children is logically connected to that interest. Unfortunately, the current record does not show such a connection.

Defendants identify three reasons that plaintiff may present a risk to his sons: his "extensive history of victimizing vulnerable minors," his "history of not taking responsibility for [his] acts" and the recommendation of plaintiff's probation and parole agent. The problem is that defendants have failed to adduce any admissible evidence supporting any of those reasons. First, defendants fail to cite admissible evidence of plaintiff's "extensive history of victimizing vulnerable victims." The only document they cite is plaintiff's judgment of conviction for disorderly conduct and bail jumping, which does not include the facts underlying those convictions. However, the judgment *does* state that visitation with plaintiff's children is permissible. The only evidence regarding the details of plaintiff's

8

crimes comes from an affidavit of defendant Thurmer, who does not explain how he has personal knowledge of plaintiff's past conduct. Watson v. Lithonia Lighting, 304 F.3d 749 (7th Cir. 2002) (disregarding affidavit when witness failed to provide foundation for testimony). It may be that Thurmer relied on another document, but defendants did not cite that document and it does not seem to be part of the record.

Second, defendants do not provide any basis for their statement that plaintiff does not take responsibility for his actions. They do not even explain what that means or how it relates to their interest in protecting children from harm. It may mean that plaintiff is refusing to participate in sex offender treatment and that officials have concluded that plaintiff is not sufficiently rehabilitated to have visits with his children. E.g., Stojanovic v. Humphreys, 309 Fed. Appx. 48, 51-52 (7th Cir. 2009) (upholding prison restriction that prohibited father from visiting with his children while he was refusing sex offender treatment). However, I cannot simply assume that is the case. Lindell v. Frank, 377 F.3d 655, 657-58 (7th Cir. 2004) ("[I]t might be possible to envision a security justification that would support the defendants' action, [but] we believe that the district court acted prematurely in presuming such a justification.") Finally, defendants fail to adduce any evidence regarding the grounds for the parole and probation agent's recommendation, so it is impossible to determine whether that recommendation is logically supported, particularly in light of the sentencing judge's determination that visits are acceptable.

9

Even if it is true that plaintiff has a "history of victimizing vulnerable victims" and that this history makes it logical to conclude that he might try to harm his own children, this would not *necessarily* mean that defendants were entitled to judgment as a matter of law. Even when prison officials' concerns are legitimate and rational, a restriction may be unconstitutional if there are "obvious, easy alternatives to the . . . regulation that accommodate the right . . . while imposing a de minimis burden on the pursuit of security objectives." Turner, 482 U.S. at 98; see also Lindell, 377 F.3d at 659-60 (concluding that restriction on receiving clippings was rational, but that it failed to pass Turner because "less exaggerated responses [were] available to the prison").

In this case, it seems that defendants' only concern is that plaintiff might try to physically abuse his children. Defendants do not suggest that all communication between plaintiff and his children would be potentially harmful. Presumably, if that were the case, defendants would not allow plaintiff to talk on the telephone with his children or write letters to them. However, if potential physical abuse is the concern, why are non-contact visits not an "obvious, easy alternative" that would accommodate both plaintiff's constitutional rights and defendants' interest? E.g., Valdez v. Woodford, 308 Fed. Appx. 181, 182-83 (9th Cir. 2009) (upholding limitation on visitation with minors to noncontact visits); Garber v. Pennsylvania Dept. of Corrections Secretary, 851 A.2d 222, 225-26 (Pa. 2004) (same).

10

In their brief, defendants suggest that the answer to this is that "the institution does not have procedures and resources in place for no-contact visitation." Dkt. #34, at 4. Defendants cite their proposed finding of fact ¶ 71 for this proposition, but that proposed fact states that "[t]he Department of Corrections does not provide *supervised contact visiting*." Dkt. #22, at 12 (emphasis added). Defendants do not propose any facts regarding no-contact visitation. Further, because the department's regulations expressly *provide* for "no-contact visiting," Wis. Admin. Code § DOC 309.11, it would be somewhat surprising if particular institutions in the state did not have resources for such visits.

The standard under Turner is deferential, but it is not "toothless." Thornburgh v. Abbott, 490 U.S. 401, 421-22 (1989). Thus, defendants must do more than state in a vague and conclusory fashion that a restriction on a prisoner's constitutional rights advances a legitimate interest. "[I]f the First Amendment is to have any meaning in the prison setting, a reason of 'because we said so' without further support cannot be sufficient to pass constitutional muster." West v. Frank, 492 F. Supp. 2d 1040, 1048 (W.D. Wis. 2007). Particularly in a case like this one, involving what seems to be a permanent ban on visitation with plaintiff's own children (at least until they turn 18), defendants must provide a specific explanation for such a severe restriction. E.g., Overton, 539 U.S. at 134 (upholding two-year visitation ban, but stating, "if faced with evidence that [the] regulation is treated as a de facto permanent ban on all visitation for certain inmates, we might reach a different

11

conclusion in a challenge to a particular application of the regulation").

Because these factual questions remain unresolved, I cannot grant summary judgment to either side. Although I could simply deny the parties' motion for summary judgment and proceed to trial, at this stage, this would not likely be a productive exercise. The problem is not that facts are disputed; it is that facts are missing from the record. Accordingly, rather than hold a trial, I will direct the parties to supplement the record. In particular, I will give the parties an opportunity to submit admissible evidence on the following questions:

> (1) what is the nature of the conduct underlying plaintiff's convictions?
>
> (2) what conduct of plaintiff's would support or undermine a conclusion that plaintiff has a history of refusing to take responsibility for his actions and how is that conduct related to a conclusion that plaintiff is a threat to his children?
>
> (3) has plaintiff engaged in other conduct since his incarceration that would support or undermine a conclusion that plaintiff presents a threat to his children?
>
> (4) do no-contact visits offer an easy alternative that would satisfy defendants' interests in protecting plaintiff's children?

The parties should file supplemental briefs with the evidentiary materials they file. Additional proposed findings of fact are not required. If, after reviewing the parties' submissions, it appears that facts are contested, I will reconsider the need for a trial.

In their supplemental briefs, the parties should address the question whether any defendants other than Thurmer were personally involved in the decision to deny plaintiff

12

visitation with his children. Neither side addressed this issue in their briefs despite authority in this circuit to the effect that a decision on a grievance does not necessarily subject a person to liability under 42 U.S.C. § 1983. E.g., Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009); George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007).

ORDER

IT IS ORDERED that a decision is STAYED on the motion for summary judgment filed by defendants Mike Thurmer, Theresa Murphy, Michael Meisner, Amy Smith, Rick Raemisch and Tom Gozinske and the motion for summary judgment filed by plaintiff James Krispin. Defendants may have until March 1, 2010 to file supplemental materials addressing the questions raised in this opinion. Plaintiff may have until March 22, 2010, to file a response. Defendants may have until April 1, 2010 to file a reply. The April 12, 2010 trial date is STRICKEN. A new date will be scheduled if one is needed after the summary judgment motions are resolved.

Entered this 5th day of February, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge