IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES J. KRISPIN,

Plaintiff,

OPINION AND ORDER

v.

09-cv-129-bbc

MIKE THURMER, THERESA MURPHY, MICHAEL MEISNER, AMY SMITH, RICK RAEMISCH and TOM GOZINSKE,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case brought under 42 U.S.C. § 1983, plaintiff James Krispin contends that defendants are violating his constitutional rights by denying him visitation with his 9 and 11-year-old sons. Defendants contend that allowing plaintiff visitation with his children or any other minors would create a risk of sexual abuse.

Defendants' motion for summary judgment is now ready for decision. In an order dated February 5, 2010, I concluded that neither side had submitted enough admissible evidence to allow the court to make an informed decision on the motion and gave them an opportunity to supplement their materials. Dkt. #37. Both sides have submitted additional materials in support of their positions, as requested by the court. Having reviewed those

materials, I conclude that defendants are entitled to summary judgment. Although "the constitutional interest here is an important one," Beard v. Banks, 548 U.S. 521, 535 (2006), plaintiff's challenge cannot survive the deferential standard of review required by the Supreme Court in cases involving limitations on a prisoner's exercise of his constitutional rights. The evidence shows that defendants have met that standard, that is, they have shown that the visitation restriction is reasonably related to an interest in protecting plaintiff's children from harm.

Although prisoners retain a right to maintain relationships with their family, that right is necessarily limited by the fact of incarceration. Overton v. Bazzetta, 539 U.S. 126, 131 (2003) ("[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context.") (citations omitted). The question is whether any particular restriction is reasonably related to a legitimate penological interest. Id. at 132. Four factors are relevant to that determination: whether there is a "valid, rational connection" between the restriction and a legitimate governmental interest; whether the prisoner retains alternatives for exercising the right; the effect that accommodation of the right will have on prison administration; and whether there are other ways that prison officials can achieve the same goals without encroaching on the right. Id.

The first factor (whether the restriction is rationally related to a legitimate interest)

is often the most important one. Singer v. Raemisch, 593 F.3d 529, 534 (7th Cir. 2010) ("The four factors are all important, but the first one can act as a threshold factor regardless which way it cuts."). With respect to that factor, defendants rely on the following information to support their conclusion that allowing plaintiff to visit with his children would put the children at risk:

- Plaintiff is serving a sentence for convictions of two counts of second-degree sexual assault and one count of fourth-degree sexual assault. Dkt. #50-2. According to the presentence report, one conviction was for making comments of a sexual nature to a developmentally disabled teenager. Dkt. #50-8, at 3. (Defendant Thurmer, the warden of plaintiff's prison, avers in his affidavit that another conviction involved "sexually assaulting a 17-year-old mentally disabled subordinate." Dkt. #50, at ¶ 4. Although Thurmer does not say how he knows the details of that conviction, plaintiff does not challenge Thurmer's testimony.)

- According to the presentence report, in 1997, plaintiff was convicted of two counts of soliciting a child for prostitution. These offenses involved plaintiff "offering 15 and 16-year-old males money if he could perform oral sex on them." The judgment was later changed to two counts of "Prostitution—Sexual Gratification." Dkt. #50-8, at 4,6.

- According to the presentence report, in 1989, plaintiff was convicted of first degree sexual assault of a child on a finding that he sexually assaulted two of his nephews. Dkt. #50-8, at 4.

- According to the presentence report, in 1985, while plaintiff was still a minor, he "was referred to social services for sexually assaulting his sister's son." He admitted to having sexual contact with his nephew "10 to 20 times." Plaintiff also admitted to sexual contact with the son of his stepbrother and his niece. Dkt. #50-8, at 4-5.

- According to Gary Ankarlo, a psychologist at Waupun Correctional Institution

> (where plaintiff is housed) and sex offender assessments performed by other psychologists at the Wisconsin Department of Corrections, plaintiff has refused to take responsibility for his offenses and is not participating in recommended sex offender treatment. Dkt. #49.

Plaintiff does not contradict this information or adduce any additional evidence of his own to show that he no longer poses a risk to minors. Instead, he argues that defendants' evidence is too speculative, stating that they are relying on "'What If' or 'What Might' theories," without citing any "current data." Plt.'s Br., dkt. #52, at 4.

It is not clear what "current data" plaintiff expects defendants to provide. Because plaintiff has been incarcerated since his last conviction for sexual assault, he has not been around minors during that time. Thus, it means little that plaintiff has not engaged in sexual misconduct with a minor in recent years. (Defendants say that plaintiff has engaged in sexual misconduct while in prison, but the document they cite to support this does not identify the facts underlying the conduct reports. Dkt. #50-6.) Further, it is rational for defendants to believe that plaintiff's continuing refusal to take responsibility for his actions is probative of his current risk for reoffending.

Plaintiff may be right that there is a possibility that he could visit with his children safely. However, defendants do not need to show with 100% certainty that plaintiff will abuse his children if visitation is allowed. The standard under Overton is deferential: defendants meet their burden if they show that there is a rational connection between their

interest in protecting minors and the restriction on plaintiff's visitation rights. Overton, 539 U.S. at 132. In restricting plaintiff's visitation, defendants relied on information showing that plaintiff has a long history of sexual assault, including sexual assaults of minors and even his own relatives. This is sufficient to show a rational connection. E.g., Beard v. Banks, 548 U.S. 521 (2006) (concluding that prison officials had shown rational connection between interest in behavior modification and prohibition on receiving newspapers even though only 25 percent of prisoners in behavior modification program completed it successfully); Singer, 593 F.3d at 536-38 (concluding that prison officials had shown rational connection between interest in security and prohibition on role-playing games even though defendants had no evidence that role-playing games had been problem in past).

Plaintiff argues that the court should not consider the information submitted by defendants because counsel for defendants did not follow the proper procedure in obtaining permission from the state court to use those records in this case because a judge other than the sentencing judge issued the order granting permission. Dkt. #52, at 7-8. Plaintiff cites no authority for this proposition and he does not challenge the authenticity of the documents provided by defendants' counsel. In any event, the question in this case is not whether counsel for defendants followed correct state procedure, but whether defendants themselves properly relied on the documents. Plaintiff does not dispute defendant Thurmer's averment in his affidavit that he already had access to those documents when he

relied on them to deny plaintiff's visitation request in 2007. Dkt. #50, at ¶ 11. Even if Thurmer had followed the wrong procedure in obtaining plaintiff's records, this would not mean that the information was unreliable or that it was unreasonable for him to conclude that plaintiff posed a risk to his children. Plaintiff develops no argument that a mistake in following proper procedure in obtaining relevant documents from a third party means that a court should refuse to consider those documents.

With respect to the second factor (whether plaintiff has alternatives to exercising his constitutional right), I agree with plaintiff that the restriction is severe. Plaintiff may not receive visits of any kind from his children, at least so long as they remain minors. The possibility exists that plaintiff could demonstrate to defendants in the future that visitation would be appropriate if plaintiff takes responsibility for his actions and participates in treatment, but neither side adduces any evidence suggesting that is likely to happen any time soon. Further, although defendants permit plaintiff to write letters and talk to his children over the telephone, many would agree with plaintiff that those alternatives are poor substitutes for visits. But see Overton, 539 U.S. at 135 (responding to objections that letters and phone calls are inadequate substitutes for visits by saying that "[a]lternatives to visitation need not be ideal").

The severity of a restriction provides "some evidence that" a restriction is "unreasonable, but is not 'conclusive' of [its] reasonableness." Beard, 548 U.S. at 532

(quoting Overton, 539 U.S. at 135). In considering whether a restriction is too severe, or "an exaggerated response," Turner v. Safley, 482 U.S. 78, 90 (1987), courts must consider whether other options are available to prison officials.

Prison officials do not need to prove that a regulation is the "least restrictive means" to advance their legitimate interest. Jackson v. Frank, 509 F.3d 389, 392 (7th Cir. 2007). Rather, in assessing the third and fourth factors, courts ask whether there are "obvious, easy alternatives to the . . . regulation that [would] accommodate the right . . . while imposing a de minimis burden on the pursuit of security objectives." Turner, 482 U.S. at 98. In the February 5 order, I raised the question whether noncontact visits might provide such an alternative.

In his affidavit, Dr. Ankarlo concludes that noncontact visits are not a viable option because plaintiff could still engage in "non-contact sex offenses" such as exposing himself. Dkt. #49, at ¶¶ 8-9. In light of the evidence that plaintiff has a history of using sexually suggestive language with minors, I cannot say that Ankarlo's conclusion is an unreasonable one. Further, because officers are not present in the visitation booths, staff would not be able stop plaintiff from acting inappropriately until it was too late. Thurmer Aff., dkt. #50, at ¶ 10. Plaintiff has not adduced any evidence to the contrary.

Defendants do not address directly the tension between prohibiting noncontact visits and permitting telephone calls, but Ankarlo's affidavit suggests that face-to-face visits create

a greater risk than voice contact because of possibilities such as plaintiff exposing himself. In addition, defendant Thurmer states that telephone calls are "recorded and monitored by the institution," but that noncontact visits are difficult to supervise because the booths are so small. Dkt. #50, at ¶ 15. These differences between telephone calls and noncontact visits provide a plausible basis for treating the two types of contact differently. Further, because prison restrictions are not subject to strict scrutiny, they are not invalid simply because they prohibit less conduct than might be justified by the prison officials' legitimate interest. Cf. Vance v. Bradley, 440 U.S. 93, 108 (1979) ("Even if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by Congress imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" (citations omitted). See also Golden v. McCaughtry, 937 F. Supp. 818, 823 (E.D. Wis. 1996) (prison restriction on speech is not invalid simply because it is underinclusive). In any event, plaintiff has waived this argument by failing to raise it.

Plaintiff raises one other argument, but it does not support a conclusion that defendants have violated his constitutional rights. Plaintiff says that the "sentencing judge [in state court] did in fact grant him an order to allow him the right to visit his own children." Dkt. #52, at 9. However, plaintiff misunderstands the sentencing court's order. The order states that plaintiff may have

No contact with victims Angela Barker or her parents Leslie and Aaron

> Hoffman or Norman and Lisa Barker, Norman Benson. AODA Assessment. Sex offender treatment. No contact with anyone under 18. May have contact with his own children while in confinement (writing, phone or visits while under control of DOC or law enforcement).

Dkt. #50-3.

The order does not command prison officials to allow plaintiff to have visits with his children; it simply makes it clear that the court is not prohibiting plaintiff from having those visits because the order *does* prohibit plaintiff from having contact with any other minors. Thus, the court's order simply allows prison officials to exercise their own judgment about the extent to which plaintiff may have contact with his children. Even if the sentencing court had ordered prison officials to permit the visits, this would not show that defendants had violated plaintiff's constitutional rights. Rather, that would be a matter of state law that plaintiff would have to raise with the sentencing court.

In concluding that plaintiff has failed to show that defendants violated his constitutional rights, I agree with the observation of the Court of Appeals for the Tenth Circuit in a similar case:

> [W]e do not discount the importance of [the plaintiff's] relationship with his children. Even inside the prison walls, that relationship is generally deserving of some form of protection. The complete ban upon [the plaintiff's] visits with his children is indeed a harsh restriction, significantly more severe than the ban on family visits upheld in Overton. Prison officials should be careful to ensure that restrictions upon visitation with a prisoner's children are justified by the circumstances, and they should seriously consider less draconian restrictions—such as closely monitored, noncontact visitation. Had [the

> plaintiff] offered evidence as to the feasibility and minimum institutional effect of a less restrictive visitation policy, this would be a closer case.

Wirsching v. Colorado, 360 F.3d 1191, 1201 (10th Cir. 2004).

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants Mike Thurmer, Theresa Murphy, Michael Meisner, Amy Smith, Rick Raemisch and Tom Gozinske, dkt. #20, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 1st day of June, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge